Good morning. May it please the Court, my name is George Harides for Ryan Associates, appearing on behalf of the petitioner, Narendra Kaur. This is a petition for review of the Board of Immigration Appeals' decision affirming, without opinion, the immigration judge's decision denying petitioner's applications for asylum and withholding for removal. Therefore, the immigration judge's decision is a final agency determination in this case, which petitioner requests the Court to review for substantial evidence. Petitioner argues that the immigration judge's decision is not supported by specific and cogent reasons, but instead on mere speculation, conjecture, and unfounded assumptions, and also a mischaracterization of her testimony on several key points. In fact, the only clear inconsistency that the immigration judge used to base her adverse credibility finding is with regards to her testimony regarding her first arrest at the Whereas her application, her declaration submitted in support of her asylum application, states that she was arrested on September 2, 1995, immediately following the assassination of the Chief Minister of the Punjab, Mr. Beyonce Singh. She testified that she was arrested on December 2, 1995, immediately following the assassination of Beyonce Singh. Why isn't that enough? Well, that's not an inconsistency in this case, because she successfully tied her arrest to the assassination of Beyonce Singh. I refer to the Court to the immigration judge's demeanor finding in this case, which appears on page 66 of the administrative record, where she finds that the petitioner had testified that she only had two or three years of education, that she was not able to do simple arithmetic, even to describe her exact age at the time she was married. And based on those reasons, she found that a credibility finding based on demeanor would be inappropriate. However, in this case, she found that because she testified to the incorrect date of her exact arrest, that was an inconsistency. Petitioner submits if it's not, if it cannot be used as a demeanor finding, it cannot be, an adverse credibility finding cannot be based on a demeanor finding, because she can't remember exact dates. How could it be used when she forgets the exact date of her first arrest? It had, an inconsistency in this case would be if, if... I'm sorry, I just didn't follow that. Okay. Well, an inconsistency in this case, considering the fact that the petitioner has trouble recalling dates because of her limited education, the fact that she never held herself out to be an... What does recalling dates have to do with limited education? It's the finding that the immigration... Essentially, two things are the same, people who have limited education have poor memory? No, but the immigration judge notes it in her own opinion, in her own decision, and furthermore, it is reasonable to... To what? Notes on page 66 of the administrative record that she has trouble doing simple arithmetic, that she has problems recalling dates, and that she, and to even ascertain her current age, to ascertain her age at the time she was married, and for those reasons, a demeanor finding would not be appropriate. However, she uses it, her inability to recall to come to an adverse credibility finding. Well, the first arrest issue, she did tie into the death of this individual, but she kept changing when the death occurred, so I don't see what you gain by that. She didn't change. She consistently testified that it was December 2nd. Now, there was... So that's the inconsistency, that it occurred, that she's saying it occurred three months later than it actually did. It did. Now, she notes... It occurred on December 2, 1995. December 2, 1995. Yeah. She consistently maintains that throughout her testimony. Yeah. An inconsistency in this case, Petitioner submits, would be if she... She declares that she was first arrested on September 2. That's in her application. She never claims that at her hearing. An inconsistency in this case, considering she has problems recalling dates, would be if she, for instance, testified that she was arrested after the... I'm not sure when you say... When somebody says somebody has trouble recalling dates, that could be a description of their, you know, just a statement of fact, or it could be, which is the way I read it, is sort of saying this is somebody who is not being truthful because she seems to have trouble recalling dates. Not in this case, Your Honor, because she consistently ties her arrest to the Beyonce Sings assassination. That forms the basis of her persecution. But when you say that the I.J. said she had trouble recalling dates, I think you're wanting to read it as a finding that she has memory problems, whereas I read it more as a way of discounting her testimony as somebody who's unreliable in her testimony because she has trouble recalling dates. A polite way of saying there's somebody who's fabricating dates and therefore has trouble keeping her facts straight. I strongly disagree, Your Honor. I think this is not an indication... You don't think that's... You disagree that that's a plausible reading of what the I.J. was doing here? No, it is a plausible reading of what the I.J. is doing, but I'm saying that's incorrect because the petitioner in this case... The reason I mention it is because you are citing this as somehow contradicting the I.J.'s determination when she said, well, you know, I find she's lying because she got the dates confused. So you're saying... You're pointing this and saying, well, you know, here the I.J. recognized she has trouble with her memory. All I'm saying is to me this just says she... I think she was fabricating she's trouble keeping her dates straight. I disagree. I believe the immigration judge is implying that because petitioner cannot recall the exact date of her arrest, that implies that that suggests that the arrest never occurred or that the arrest didn't occur in the way that she states it did. So I think the immigration judge is concluding that she's dishonest, that she's changing it. She can't keep it consistent. But she's been consistent that she was arrested because in the aftermath of Beyond Singh's assassination as a result of the Indian police's interest in her husband. I think we have your argument. That's what happens in cross-examination. Nobody ever... What's your comparison on cross-examination says gets tripped up on a major central fact. Usually what people get tripped on are details. They tell a story once and then you cross-examine them and, you know, the central fact seems to stand. But you chip away at the details and that's how the trial fact determines that, well, maybe the central fact isn't true because they can't keep their details straight. That's how cross-examination... Your Honor, an immigration judge's speculation about what a petitioner should or should not know is no substitute for substantial evidence. There must be specific and cogent reasons taking into consideration the background of this specific petitioner to find out should she have known. But in this case, here's what you have. And I tend to agree with you that many of the reasons given may not rise to the level that we would demand of an adverse credibility determination. But the date of the arrest is important. And she tied it, rightly or wrongly, to the assassination of Beyonce Singh. And that happened some months before. They aren't tied together. It didn't happen around December 2nd, according to the IJ. They are tied together in the sense that she said she was arrested immediately after Beyonce's assassination. She just simply got the date wrong. Yeah, well, he was assassinated on August 31st, 1995. And she kept saying that it was December 2nd, 1995. Now, I may read the IJ's decision a little different than my colleagues. But it seems to me she's saying, while she had difficulty recalling dates and appeared confused, there were other times she appeared to recount the circumstances of her application as if by rote. What I took that to mean is that, yeah, she's all over the map on dates. And I'm not necessarily holding that against her. But on the central fact, she looks like she's coached on this assassination business, tying the date to that. She's one fact she keeps repeating. And I don't find her credible on that. Well, Your Honor, if you decide to dismiss the appeal based on that one issue, then so be it. Because that is the only inconsistency that rises to the level of that can form the basis of an average credibility finding. But I think that if you...  Yes, Your Honor. That has to do with the securing of release from prison. Yes, Your Honor. The IJ also listed that among the seven or eight that the IJ listed. First, it was her father-in-law that used his influence. Next, there was a president of a family. Then finally, there was a lawyer that had the papers and brought... You're shaking your head no, but I've read the record. Your Honor, well, then I would ask Your Honor to point that out to me. If we look at page... Let me see where that arises. Page 97 and also page 106 of the record. Page what? 97 of the administrative record as well as 106. First on 97, she does say that these individuals tried to intervene to secure her release, but that ultimately it was Tom, I believe. Let me just... But that ultimately it was the ex-president of the Akali Daul, I believe. Tom Singh Akali, who intervened and got her released. That appears on page... On line 23 and 24 of the administrative record on page 97. But you're not disagreeing that she said it first. It was the father-in-law's intervening. Second, a president of a family. And third, a lawyer was hired that brought certain papers. You're not saying that was all the same person, are you? No, Your Honor. If we look at line 12 on that same page. Line 11. Then my father-in-law talked to Tom Singh Akali. Line 11, yeah. Yeah, and so forth. Then on 106, when it refers to the attorney, she never says that the attorney secured her release. When they said on line... On line 21, she was asked, ma'am, I thought you said you were released because of the intervention of Tom Singh Akali. And she replies, yes, he is the one. If we look preceding that, when it refers to the attorney, who was representing to try to bond her out, she never says that he secured my release. She just said that her family had tried... Had papers and brought him over the jail. Where does it say that, Your Honor? Here somewhere. It said on line 2, when the police arrest me, the attorneys have the paper when they want to get you bailed out. But she doesn't say that that had in fact happened in this case. Well, she's not a lawyer. And also, Your Honor, and none of these... I'm sorry to interrupt. And none of these inconsistencies were these... None of these alleged inconsistencies were pointed out to the response. She didn't know where the judge or the government attorney say, Ms. Carr, you stated in your application this. You're stating this now. Can you address that discrepancy? Petitioner has only been able to address these issues in her briefs, and I believe on appeal. And I believe that she has sufficiently... That she has sufficiently countered the immigration judge's adverse credibility finding on those issues. You're suggesting a due process violation? No, I'm not, Your Honor. I'm just pointing that out to the court. Let me ask you one other question. That has to do with the brother. On what? The brother? Yes, Your Honor. The unfortunate episode. Yes, Your Honor. The immigration judge thought that... Should have been included in the evidence. That her being arrested and burned to death in front of them would be sufficient in her mind. It would be in the written record that that would show tremendous amount of persecution. How do we respond to that? Okay, I respond to that by saying, first of all, it happened 10 years before the persecutions she suffered at the hands of the Indian police, and it did not form the basis for her persecution. Her persecution is based on her husband's activities. Therefore, what happens 10 years before her persecution is not central to her application. It's merely background evidence of the conditions in India and the conditions her family suffered in India. And also, the immigration judge even interrupts the trial attorney for the petitioner at that level and asks him to move on if we look at page 86. Well, I understand. And the lawyer said, I'm just getting into her childhood. Yeah. And then the immigration says, well, you know what's relevant. Give us the relevant stuff. Well, at that time, he could have said, tell us about your brother who was burned to death showing persecution of the family. The lawyer was never cut off. He was cut off from talking about the childhood because the IJ says, I assume she had a childhood. But still, her persecution is not based on what her brother suffered. Isn't the persecution of the family relevant? It is relevant, but it's not central. Wouldn't burning to death a boy be relevant to the case? No, it is relevant. It's highly relevant, Your Honor. But it's background information about the country conditions in India. It's not central to her account of persecution. In what language did she testify? She testified in Punjabi, Your Honor. And in the Punjab language, how close is the pronunciation of September and December? Well, actually, from what I've learned, I don't have anything in the record to substantiate this. Apparently, there's no word for the months because it is a Christian calendar or what have you. So they have to refer to the ninth month or the 12th month. And I can't tell from the record if that's what indeed happened. I do know that at one point, the trial attorney asks the interpreter to tell the petitioner to speak in her own language as opposed to English. I think at some point, she was responding in English when she said December. So there is no exact word in Punjabi for those months from what I understand. But so that's why we instruct our clients to say the ninth month or the 12th month. And I can't tell in the record if she did testify the 12th month as opposed to the ninth month. But what that's... But the same date of the day of the month, which is why I ask. I mean, she says in her application it's September 2nd. And then... Well, she doesn't say she was arrested the day of the Beyoncé assassination. She said she was arrested immediately following Beyoncé's assassination. So here, he was assassinated on August the 31st, according to the Department of State report. And that she's claiming on her application that she was arrested on September 2nd, immediately afterwards. Right. She says September 2nd in her application. And then she testifies December 2nd. My only question is, is there... I can't... I'm not arguing interpreter error here. But to answer your report's question, it's plausible. Thank you. Excuse me, counsel, on the one about the lawyer, I had in my mind that she said she had to hire a lawyer. That's on page 106 of the record. Good morning, Your Honors. May it please the Court. My name is Isaac Campbell, and I represent the government. I know you had some issues before about the microphone. I just want to make sure I can be heard clearly. Yes, you need to speak up a little bit, yeah. In this case, Your Honor, petitioners... Your Honors, petitioners failed to meet a burden establishing eligibility for asylum. And the pertinent issue before this Court is whether substantial evidence requires this Court to grant asylum to a petitioner. Now, opposing counsel stated that there was only one clear inconsistency. However, the record shows... The record evidence shows there were at least nine issues. And walking through that, I would show with these nine issues that were raised, it shows that substantial evidence, again, does not compel the conclusion that petitioner is entitled to asylum. Now, beginning with petitioner's own arrest, the day of the arrest that fluctuates, one of the things that opposing counsel talked about is that the immigration judge made some exception because of her lack of formal education, the minimal education she received. In fact, what the petitioner cites, I believe it was in the immigration judge's decision, she did not make a finding that because of the formal education, she had trouble regarding dates. What the immigration judge actually stated was that given the lack of formal education, the minimal education, she accounted for the fact that it would account for inability to calculate her age. There was some issue with that. And she said, well, perhaps then that's why she was not able to calculate the dates correctly. But she did not somehow suggest that a lack of formal education would mean that she could not remember dates. And there is that issue which fluctuated. She also had some issues with the times of her husband's arrest. In her asylum application, she stated that her husband was arrested many times. In her testimony, however, at the administrative record at page 111, she stated that there were no problems with the police with anyone in the family, including her husband, prior to the first arrest in January of 1995. So that's the second inconsistency. The third inconsistency regarded the persons who effectuated her release. On page 169 of her asylum application, she talks about being arrested twice. In the first example she provided, she says that there were local political leaders that effectuated her release in the first instance. And then in the second arrest, she specifically mentions a Tom Singh. I believe I'm pronouncing that name correctly. And she distinguishes between the local political leaders who purportedly got her released in the first arrest. And at the second time, she mentions a Tom Singh specifically. However, the administrative record at 97, when talking about that first arrest, she then says it was a Tom Singh. Again, I hope I'm pronouncing that right. Who allegedly secured her release the first time. And then, as Judge Watson, you mentioned at page 106, she also refers to the attorney who supposedly had some involvement with her release. And those were inconsistencies as well. She said, when they have to get me out of the police station, they had to hire the attorney. So I don't know what all that means. She tied it into getting out. Exactly. Why is that inconsistent? I mean, she testified someone helped secure a release and they used an attorney. Why is that inconsistent? Well, I would suggest it's inconsistent in looking at it in context. Looking first at page 106 of the asylum application, she suggests that it was, and we're talking specifically about the first arrest in each instance. She said that it was local political leaders, unnamed local political leaders. And in that same asylum application, she later distinguishes a Tom Singh as someone different. She specifically mentions him with the second arrest. So according to asylum application, it was local political leaders. On page 97, she specifically says that it's a Tom Singh that she refers to. So there is an inconsistency there. And then at 106, she refers- Why couldn't it be the same, referring to a local political leader, a Tom Singh? Because in looking at, on page 169, she refers to local political- No, I understand your argument. But basically, your argument is, you refer generically in this section. You refer specifically in this section. Therefore, this person can't be that person. I don't think that logically follows. Well, I would suggest that because she distinguished him and referred to him specifically in the second instance and didn't refer to him in the specific, it leads to the conclusion or it leads to a plausible conclusion that they were different people. And looking at the standard of review here, the question then is, in looking at all of these examples of the nine different examples of which we were at three, whether or not there is substantial evidence to support the immigration judge's conclusion. And then if so, the record evidence would not compel a different conclusion, because it's not- the issue is not so much whether or not the decision is reasonable or if a plausible- I understand the standard. I just don't think that- it doesn't seem to me that particular point is necessarily inconsistent. It certainly wouldn't be enough to uphold an adverse credibility finding on its own. On its own. But again, running through all of these in combination. And it seems to me that the important ones are around her arrest. That's what she's basing her- the dates of the arrest are perhaps the most critical. Certainly. And the honest have certainly addressed that, Judge Thomas. And so I would argue that that is critical. However, I would add that there were several other factors in addition to that. She also talks about the- there was the omission of her brother's reported death by the police that she did not raise in the asylum claim. There was another issue that the immigration judge looked at. The fifth issue the judge looked at was the letter from the attorney that she- that was raised on 106. The letter from the attorney, the immigration judge, she also found that it was somewhat suspect inasmuch as the language of the letter from the attorney. There was some issue about when she received it. And there was an issue that she said that her father sent it to her. But then she couldn't find the envelope. And then she referred to the fact that she got it before she left India. Looking at the contents of the letter from the attorney that she provided, it provides- it is verbatim- the language is verbatim what is used in the asylum application. And it also switches pronouns where it talks as if she was the person who wrote it instead of the attorney, where she talks about, you know, I suffered or when she talked about her reported encounter in the police station, she talks- it speaks in the first person. And the judge found that that was an issue. She talks about the dates for her child's birth. She said that after her husband disappeared, she did not see him again. And the first time she saw him again was in April of 1996. However, she then says that her child was born- her husband's child was then born on November of that same year, seven months later. And there was no discussion about whether the child being premature or this issue or whatever. Right. But she wasn't questioned about it. It really has nothing to do with the merits- the central merits of her claim, does it? Well, in terms of- I raise all these issues to say that that is just one more example in terms of supporting the IJ's decision about the issue. I don't have the dates quite in my mind about the birth of her son, but if I'm correct on it, the son, according to this, was born four months early, four months premature. Actually, I have it that he was born three months premature. Yeah, three months premature, yeah. Well, be that as it may, I suppose to- that seems kind of significant. That's not a day or two or a week or two premature. But the question is, should she have been questioned about that, or can the IJ take that as indicating that it just makes no sense and it's an indication she's fabricating that situation? Well, I think, Judge Wallace, in this case, looking at this, whether or not she was questioned about that specifically, I think when you look at the- all of these issues in context, it casts- Well, we can't do that, though. We have said that if the board comes up with one out of however many, here eight or ten, that one is enough, and we'll sustain the board if they find one. But we've never said you could group all of them together and make one, have we? No, Your Honor, I'm not suggesting that. I'm not simply saying that you should group them all together. I'm saying there are several that could stand on their own. Yeah, but many of them don't. You'd have to agree that many of them don't. I'm not sure that this inconsistency about the birth stands on its own. It doesn't go to the merits of the claim. And the IJ said that she has difficulty calculating dates, plausible that it was born premature, seven months. She wasn't questioned about it. I mean, she just stated it. If that were the only thing here and the rest of her story was credible, we couldn't rely on that, could we? That doesn't stand on its own. Well, perhaps, Your Honor. However, I think that in this situation, fortunately, we don't have to rely on just that issue. Right. So let's just identify. I mean, aside from the dates of the arrest, what are the other adverse credibility findings that you think independently stand on their own without needing to rely inferentially on the rest of them for a cumulative finding? I would argue, if you're asking for those things that could stand on their own, I would argue that that is significant. I would argue her husband's arrest, the dates surrounding the fact whether or not he was arrested before or not, and having been arrested many times because part of her claim is that her husband had been part of this group and had been arrested many times. I would argue that was significant. I would argue that the individual's effectuating release, that how that was portrayed, I would say that was significant. I would argue the letter from the attorney that she provides is corroborating evidence, and the fact that it seems to speak in this first-person tone would seem quite odd. I would argue that's significant. I would argue the fact that she omitted the death of her brother is significant. I would argue the lack of easily attainable corroborative evidence is significant. Let me ask you about the husband's arrest. That's a troubling one for me. You point to a statement that was a question, do you have any problems, did your family have any problems with the police before your husband was arrested in January 1985? And she says, before there was no problem. And the government challenges her on that because he was having problems. But it's a double question. She could be either answering either do you have any problems or did your family have any problems. If she asked her the former, it's completely true. It's only you take the assumption that she's answering the latter that it becomes grounds for demonstrating, as the IJ found, that there was an inconsistency. Similarly, when she testified about an altercation she had with the police and her husband in 1985, she described, this was my first, first start of having problems. She didn't say it was my family's first. I'm having a little trouble with that one, showing that, I mean, the difficulty was the way a compound question is asked. And we all know in cross-examination you have to make your questions non-compound or they won't handle, they won't focus on it on appeal. Do I have, am I mistaken about that? I'll respond to that. I respond to that answer, I think, to directly answer it in three ways. First, I would say that that is but one string, one single string by which this court could make its determination that there are several. But responding specifically to that, I think that even though counsel asked the question and referred to Petitioner specifically, Petitioner stopped and then rephrased the question, so I think a logical or reasonable inference is that having stopped and then rephrased the question, that Petitioner was responding to the question that was asked. Since Petitioner stopped to ask the question, the logical inference is that that is what she was responding to. And then I think in answering this in context, I think that also the other issue is does, was it reasonable then for the judge to make that inference and then if so, the record evidence would then not compel a different conclusion because the issue is not whether or not the immigration judge could have viewed it one way or the other. The question, the pertinent issue I believe then is if the immigration judge then assumed that she was responding to the question that was ultimately asked, is that reasonable inasmuch as then the record evidence would not compel or require a different conclusion. And so if the immigration judge can reasonably conclude that she was responding to the question that was asked and made that inference, then the immigration judge's decision should be upheld. Except, if I might interrupt, the problem is that we have case authority that says on an issue like I think this one, that if the failure to cross examine or engage further examination is significant in determining whether it's appropriate, it is used appropriately to make an adverse credibility finding. So here it looks to me as though you have an ambiguous, arguably ambiguous question. She answers it. And the immigration judge, aha, you know, she's lying about this. But then there's no question about was your husband arrested prior to that date. Her husband's prior arrests really aren't central to her claim. And they weren't inquired about. So it's difficult for me to say that stands on its own as an independent reason. That's just my reaction. And just in response to that, then I would say that I think there were also several other grounds that this was simply one of many that also chose that. Thank you, Your Honor. Thank you. I think you're out of time. Yeah. The case is already being submitted. Last case on the calendar, Dino v. Ashcroft. We appear to be absent in the training.
judges: Wallace, Kozinski, Thomas